UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MANUEL B. MILO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 02 C 4096 |
| v. | ) |
| | ) Judge George M. Marovich |
| CONTOUR SAWS, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Manuel B. Milo ("Milo") filed a complaint of employment discrimination against defendant Contour Saws, Inc. ("Contour Saws"). Milo alleged that Contour Saws discriminated against him on the basis of his age, color, national origin and race in violation of the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Milo also alleged that Contour Saws subjected him to unlawful retaliation.

Defendant moves for summary judgment on all of plaintiff's claims. For the reasons set forth below, the Court grants defendant's motion for summary judgment.

**I.      Background**

Before the Court discusses the disputed and undisputed facts, it reiterates the importance of complying with Local Rule 56.1. Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. As the Court notes on its website (and has mentioned in multiple opinions), the Court enforces Local Rule 56.1 strictly. *See Thomas v. CitiMortgage, Inc.*, Case No. 03 C 6177, 2005 WL 1712266 at *1 n. 1 (N.D. Ill. Jul. 20, 2005); *Perez v. City of Batavia*, Case No. 98 C 8226, 2004 WL 2967153 at *10 (N.D. Ill. Nov. 23, 2004); *see also Ammons v. Aramark Uniform*

*Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). Facts that are submitted but do not conform with the rule are not considered by the Court. For example, facts not included in a party's statement of material facts or in a party's statement of additional facts are not considered by the Court because to do so would rob the other party of the opportunity to show such facts are disputed. Thus, facts either party included in its/his brief(s) but not in its/his Rule 56.1 statement of facts are not considered by the Court because the other party had no opportunity to controvert the facts. Defendant argues that this means the Court cannot consider any facts the plaintiff mentions in his response to defendant's statement of facts. That is not quite right. In his response, plaintiff is obligated to put forth evidence to controvert any facts defendant supports in its statement of facts. The Court will consider the evidence plaintiff puts forth in determining whether there is a material issue of fact. Additional facts, however, are considered only if the non-moving party sets them out (and properly supports them) in a Rule 56.1 statement of additional facts.

Defendant also complains that plaintiff has denied many of defendant's facts without putting forth admissible evidence and, thus, that all of defendant's facts should be deemed admitted. Defendant is correct that where one party supports a fact with admissible evidence and the other party denies the fact without citation to admissible evidence, the Court deems the fact admitted. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). This, however, does not absolve defendant of its initial burden of putting forth admissible evidence to support its facts. Asserted "facts" not supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes are not considered by the Court.[1]

---

[1]For all of its complaints about plaintiff's compliance with Local Rule 56.1, defendant was a bit sloppy itself. For example, to support the fact asserted in ¶ 32, defendant cites page 89 of Przybylski's deposition transcript, the contents of which are as follows:

The following facts are undisputed unless otherwise noted.

**The company and Milo's employment**

Contour Saws is a subsidiary of DoALL Company, which manufactures sawing elements, sawing machines and cutting fluids, among other things. Contour Saws develops and manufactures DoALL industrial saw blades. It operates a manufacturing facility in Des Plaines, Illinois, where it employed about 100 individuals as of the year 2000. Each of those employees worked in one of five departments: Slitting/Edging, Bi-metal, Milling/Grinding, the Saw Plant or Carbide.

The Carbide Department has been run, since 1996, by John Przybylski ("Przybylski"), the Vice President of Manufacturing. During the relevant time period, Tom Koszewski ("Koszewski") was the Foreman of the Carbide Department. Milo worked in the Carbide Department during most of his employment with Contour Saws.

Contour Saws first hired Milo in 1990 as a high speed heat treat operator. In that position (and in all of his positions at Contour Saws), Milo worked the second shift, i.e., 4:45 p.m. to 2:45

---

A: To the best of my recollection is he was going to get back to me on how things were going to work out. There was no negative.
Q: And did he seem interested in the possibility?
A: Yes.
Q: And you had a discussion about this? He asked questions, things like that?
A: Yeah, going back and forth, yes.
Q: And when was the next time you talked to Manny about this?
A: I know I would have followed up. I don't recall following up, but I know I would just in our conversation going back and forth prior to the last day of employment.
Q: So you don't specifically–
A: But I can't specifically say what day–I can't tell you what
(Przybylzki Dep. at 89). From this testimony, defendant asserts: "As Milo's training date approached, Przybylski met with Milo to confirm that he would be available for training on Monday, October 2, 2005." The precise and detailed fact asserted by defendant is a leap from the cited testimony. Because defendant did not properly support the fact, this is an example of a fact the Court does not deem admitted despite plaintiff's denial of the fact without citation to admissible evidence.

-3-

a.m. Within one year, Contour Saws promoted Milo to a Carbide Department position, in which Milo operated a machine that brazed carbide cutting tips to the teeth of saw blades.

Contour Saws promoted Milo again in 1997. At that time, his foreman recommended him for the position of second-shift lead man for the Carbide Department. Contour Saws selected Milo because he knew how to operate the machines and was able to train other employees. As lead man, Milo was responsible not only for operating his own brazing machine but also for directing the work of three second-shift Carbide employees, including Andrzej Rog ("Rog"), a brazer/setter; Eugeniusz Nowak, a grinder; and Vitthal Patel ("Patel"), a grinder. As lead man, Milo possessed the keys to Koszewski's office.

**Milo's discrimination complaints**

During his employment with Contour Saws, Milo (a 48-year-old Filipino man) witnessed what he considered to be discrimination and complained about it on a few occasions. At some point, Przybylski told Milo that because Milo is Filipino, he is quality-oriented and that because Przybylski is Polish, he takes pride in his work. In the spring of 2000, Milo complained to Koszewski that employees were calling other employees racist/offensive names, such as "wetbacks," "Pollocks," "Flips," and "Nigger."

Also in the spring of 2000, Milo twice witnessed the disciplining of second-shift employee Vitthal Patel. At the first disciplinary meeting, at which Koszewski and Milo were present, Przybylski gave Patel a verbal warning. About a month later, the company set up a meeting to give Patel a written warning, because his performance again needed improvement. Before the meeting started, Koszewski and Milo waited for Przybylski and Patel. Koszewski told Milo that Przybylski had said that he hates Hindus, "Indian guys" and Patel because he is too old and too slow to move. (Przybylski, for his part, denies making the statement.) Milo asked

Koszewski whether the company was disciplining Patel for his work or because Przybylski hated Indians and/or thought Patel was too old.

Milo also complained to Human Resources Director Kenneth Stock ("Stock") about the distribution of overtime. Milo asserts that Alex Mejia, a Mexican carbide technician, received more overtime that he. Milo, however, routinely turned down overtime work, which typically required working on Friday (a day the employees usually did not work).

Another incident that displeased Milo occurred in August 2000. Koszewski concluded that someone had been sleeping in his office and that things were missing. Accordingly, he decided that he no longer wanted anyone to have access to his office when he was not present. Koszewski required Milo to return the key to Koszewski's office.

### Events leading to the termination of Milo's employment with Contour Saws

At some point, Contour Saws decided to phase out brazing. In the first quarter of 2000, DoALL's Sales Department informed Przybylski that the industry was changing to welded product. Contour maintains that it is more efficient to weld saws than to braze them because a typical brazer could braze three carbide tips per minute, while a typical welder could weld thirty carbide tips per minute. Contour Saws's shipments of brazed blades decreased to less than 700 feet in November 2000 and to less than 400 feet in December 2000.

Milo remained a Contour Saws employee until October 2000. The circumstances surrounding the termination of Milo's employment with Contour Saws are disputed.

#### *Milo's version of the events leading to the termination of his employment*

According to Milo, in the summer of 2000, Przybylski asked him to recommend someone from the second shift in brazing to cross-train as a welder. Milo recommended Rog (a second-shift brazer) for the position.

Milo testified that when he arrived at the beginning of his usual shift (i.e., second shift) on October 2, 2000, Przybylski told Milo that he could no longer do brazing work for the company because it did not have enough brazing work for him. Milo objected, because he had seen the September back order report, which said that the company had 6,000 feet of carbide orders that needed to be brazed. Przybylski did not respond to Milo's statement about the back orders. Instead, Przybylski ordered Milo to begin operating a welding machine, even though Przybylski knew that Milo was not trained to use the welding machine. Milo refused.

According to Milo, Przybylski discharged him for refusing to operate the welding machine. When Milo protested that he was not trained to operate the machine, Przybylski told him that he would be trained but that the trainer had already left. Milo, believing that he had been discharged, asked if he could finish his shift so that he would get paid. Milo was allowed to inspect saws during the remainder of his shift. On October 3, 2000, believing himself fired, Milo filed for unemployment benefits and did not go to work at Contour Saws.

Contour Saws's Human Resources Director, Stock, noticed Milo's absence on October 3, 2000. He telephoned and left a message for Milo, who returned his call the next day. During their October 4, 2000 telephone conversation, Stock told Milo that there had been some confusion regarding his last night of work and that he was not, in fact, discharged. Stock told Milo that he could train during first shift and then return to work on second shift, without losing any benefits or pay. Once Milo informed Stock that he had already applied for unemployment benefits, however, Stock became upset and terminated Milo's employment.

### *Contour Saws's version of the events leading to the end of Milo's employment*

Contour Saws disputes Milo's version of the termination of his employment. According to Contour Saws, Przybylski never asked Milo to recommend an employee for the welding position. Rather, Przybylski decided that Milo should be trained as a welder, and he offers

several reasons for this decision. First, Rog had experience using a set machine, so Przybylski transferred him to a setting position. Second, because Milo had brazing experience, Przybylski thought Milo would be able to pick-up welding skills easily. Finally, because the company was eliminating the brazing work, Contour Saws had to train Milo as a welder so that he could remain employed.

Przybylski testified that he told Milo a couple of times in September 2000 that he would begin welding training on Monday, October 2, 2000. Przybylski told Milo that Alex (presumably Alex Mejia, a welder on the first shift) would be available to train Milo with respect to welding. According to Contour Saws, although Milo's supervisors expected him to arrive for training during first shift on October 2, 2000, they did not discharge him when he did not. Contour Saws notes that if Milo had been discharged, he would not have been allowed to finish his shift on October 2, 2000.

Contour Saws agrees that Milo did not show up for work on October 3, 2000, that Stock telephoned Milo on October 3, 2000 and that the two spoke by telephone on October 4, 2000. According to Contour Saws, however, Stock did not discharge Milo during the conversation. To the contrary, Stock expected Milo to attend training on October 5, 2000. It was only when Milo failed to attend work on October 5, 2000 that Contour Saws terminated his employment.

**Milo believes others were treated more favorably**

Milo asserts that other employees were treated more favorably than he. While Milo was expected to operate the welding machine, two employees (Roger Raj, an Indian, and Carlos Max, from Peru) were not required to operate the welding machine even though they were qualified to do so. In addition, Andy Rog, who was Polish, was not required to be trained as a welder.

**Milo's charge of discrimination**

Ultimately, Milo filed a charge of discrimination, alleging that he was retaliated against for his complaints of discrimination. On the actual charge form, Milo checked the box for retaliation but did not check the box for any other basis of discrimination. On his charge questionnaire, on the other hand, Milo checked the boxes for discrimination based on retaliation, race, color and national origin.

II. **Summary Judgment Standards**

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

III. **Discussion**

A. **Failure to exhaust**

Before bringing a claim under Title VII or the ADEA, a plaintiff must first exhaust his administrative remedies by filing a charge of discrimination with the appropriate state or federal agency. *Dandy v. UPS, Inc.*, 388 F.3d 263, 270 (7th Cir. 2004); *Sauzek v. Exxon Coal USA, Inc.*,

202 F.3d 913, 920 (7th Cir. 2000). Defendant argues that it is entitled to summary judgment with respect to Milo's ADEA and Title VII claims for disparate treatment, because Milo failed to exhaust his administrative remedies. Defendant's argument is based on the fact that on his charge of discrimination, Milo checked the box for retaliation but did not check the boxes to assert any other basis of discrimination.

When Contour Saws filed a motion to dismiss Milo's ADEA and Title VII disparate treatment claims for failure to exhaust administrative remedies, the Court denied the motion. The Court reasoned, among other things, that because plaintiff was acting *pro se* when he filed his charge and because plaintiff's charge questionnaire listed and described several bases of discrimination beyond retaliation, that plaintiff had adequately exhausted his administrative remedies. The Court will not reconsider that decision now. The Court, will, however, clarify the earlier ruling. On his charge questionnaire, Milo checked the boxes for race, color, national origin and retaliation. He did not check the box for age and did not mention age as a possible cause of discrimination anywhere in his charge or his charge questionnaire. The Court grants Contour Saws summary judgment on Milo's claim under the ADEA, because Milo failed to exhaust his administrative remedies.[2]

### B.  Milo's disparate treatment claims

Milo claims that he suffered several adverse employment actions due to his race, color and/or national origin in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §

---

[2]Even had Milo exhausted his administrative remedies on his age claim, Contour Saws still would be entitled to summary judgment on the age claim. The summary judgment record is devoid of any evidence that any younger employees were treated more favorably than Milo. Accordingly, Milo has failed to put forth sufficient evidence to make out a *prima facie* case of age discrimination.

1981 ("All persons . . . shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white persons."). Specifically, Milo asserts that he was discriminated against when Contour Saws denied him overtime, required him to return the key to Koszewski's office and terminated his employment.

Because Milo provides no direct evidence of discrimination, he follows the indirect method of establishing discrimination, as outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under the *McDonnell Douglas* framework, the plaintiff must first make out a *prima facie* case of discrimination. To make out a *prima facie* case, Milo must show that: "(1) he belongs to a protected class; (2) his performance met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated individuals not in his protected class received more favorable treatment." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005) (Title VII); *Gonzelez v. Ingersoll Milling Machine Co.*, 133 F.3d 1025, 1035 (7th Cir. 1998) ("The same standards governing liability under Title VII apply to section 1981."). If the plaintiff makes out a *prima facie* case of discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its decision. *Brummett*, 414 F.3d at 692. Then, the burden shifts back to the employee to show that the proffered reason was pretextual. *Id.* Evidence of pretext is "evidence that [the proffered reason] was contrived; a mask for discrimination." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). The "ultimate burden of proof to establish discrimination remains at all times with the plaintiff." *Butts*, 387 F.3d at 924.

### 1. Milo's termination claim

Milo's first disparate treatment claim is that he was discharged due to his race, color and/or national origin. Although Milo puts forth sufficient evidence to show he meets some of the elements of a *prima facie* case of discrimination, Milo fails to put forth sufficient evidence for all of the required elements.

Milo meets the first three elements of the *prima facie* case. First, Milo is a member of a protected class: he is Filipino. Second, Milo has put forth sufficient evidence that he was meeting his employer's legitimate performance expectations. Milo had long been the lead man on the second shift. No evidence in the record suggests that Milo was anything less than a satisfactory employee.

For the third element of the *prima facie* case, Milo must establish that Contour Saws subjected him to an adverse employment action. It is clear that the termination of employment is an adverse employment action. *Farrell v. Butler Univ.*, 421 F.3d 609, 614 (7th Cir. 2005). The Court does not, however, believe Milo's disparate treatment claim is limited to the actual termination. Milo is also complaining that the decision to transfer him to welding and, correspondingly, the decision to require him to train for the welding position on the day shift were discriminatory. Neither of those decisions (to transfer Milo to welding or to require him to train temporarily on the day shift), however, can be considered adverse employment actions. First, Milo has not presented any evidence that the transfer to welding would have resulted in reduced pay or otherwise suggested demotion. *Quantock v. Shared Mkg. Services, Inc.*, 312 F.3d 899, 903 n. 1 (7th Cir. 2002) ("For a job transfer to be a 'tangible adverse employment action,' it must be accompanied by 'a decrease in wage or salary, a less distinguished title, a material loss

of benefits, significantly diminished responsibilities, or other indices that might be unique to a particular situation.'") (internal citation omitted).  Furthermore, a temporary transfer–such as to another shift for the purposes of training–does not constitute an actionable adverse employment action.  *See Daulo v. Commonwealth Edison*, 938 F. Supp. 1388, 1398 (N.D. Ill. 1996) (temporary shift transfer for the purpose of retraining not an adverse employment action); *Boyle v. Lucent Technologies Inc.*, Case No. 99 C 1818, 2000 WL 349882 at * 4 (N.D. Ill. April 4, 2000) (temporary transfer not involving loss of pay was not adverse employment action).  Accordingly, neither Contour Saws's decision to transfer Milo to welding nor its decision to require him to train temporarily on the day shift constitute adverse employment actions.  The termination of Milo's employment, however, constitutes an adverse employment action.

Milo's effort to make out a *prima facie* case of discrimination fails on the fourth element, because he cannot point to a similarly-situated employee outside his protected class who was treated more favorably.  Although Milo has put forth evidence of comparable employees who were not required to transfer to a welding position, that transfer was not, as the Court has already explained, an adverse employment action.  The only adverse action was the termination of Milo's employment.  The parties agree that Stock (the Human Resources Director) told Milo on October 4, 2000 that he had not been discharged on October 2, 2000.  The parties disagree, however, as to whether Milo was discharged during the October 4, 2000 telephone conversation (due to, as Milo asserts, Stock's disappointment that Milo had already filed for unemployment benefits) or the next day (due to, as the company asserts, Milo's failure to attend training that day).  Milo, however, fails to point out either a comparable employee outside his protected class who was not discharged after filing for unemployment benefits or one who was not discharged for failing to

attend training. Accordingly, Milo has failed to put forth sufficient evidence to make out a *prima facie* case of discrimination.

Because Milo cannot make out a *prima facie* case of discrimination with respect to his termination, Contour Saws is entitled to summary judgment.[3]

2.  *Milo's overtime claim*

Milo also argues that he was discriminated against with respect to overtime. Milo asserts that Alex Mejia, a Mexican employee in the Carbide department, was given more overtime than he was given. The Court will assume Milo can make out a *prima facie* case of discrimination with respect to overtime.

Contour Saws offers a legitimate, non-discriminatory reason for giving Milo less overtime. Specifically, Contour Saws put forth evidence that Milo routinely turned down the overtime that was offered to him. Milo provides no evidence about whether or not this explanation was true or honestly believed by Contour Saws. Because Milo fails to put forth any admissible evidence that Contour Saws's legitimate, non-discriminatory explanation was a

---

[3]Even if Milo could make out a *prima facie* case, Contour Saws would still be entitled to summary judgment. Contour Saws has put forth a legitimate, non-discriminatory reason for the termination of Milo's employment: he failed to show up for training on October 5, 2000. The closest Milo comes to showing that Contour Saws's reason was a pretext for discrimination is his testimony that Stock terminated his employment as soon as Stock found out that Milo had filed for unemployment benefits. But this evidence does nothing to suggest that Contour Saws's explanation was pretext for discrimination made unlawful by Title VII or § 1981, i.e., discrimination based on race, color or national origin. No reasonable jury could conclude that Contour Saws violated Title VII or § 1981 when it terminated Milo's employment. Accordingly, Contour Saws is entitled to summary judgment in its favor. *See Walker v. Abbott Laboratories*, 416 F.3d 641, 645 (7th Cir. 2005) ("One of [the summary judgment standards] is that a litigant is entitled to summary judgment if, should the case go to trial on the record compiled in the summary judgment proceedings, he would be entitled to judgment as a matter of law.").

pretext for discrimination, Milo has failed to put forth sufficient evidence to support his overtime claim.

Contour Saws is granted summary judgment on Milo's claim that he was denied overtime in violation of Title VII and § 1981.

### 3. *Milo's key claim*

Milo's third disparate treatment claim is that he was discriminated against when Koszewski required Milo to return the key to Koszewski's office. For some period of time, Milo, as the second-shift lead man, possessed the key to Koszewski's office. In August 2000, Koszewski asked Milo to return the key because he was concerned that people were sleeping in his office and that items were missing from his office. Here, plaintiff fails to make out a *prima facie* case of discrimination.

For starters, the requirement that Milo return the key is trivial and cannot (in this case, anyway) be considered an adverse employment action. *See Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996) ("not everything that makes an employee unhappy is an actionable adverse action"). Milo did not lose pay, his title or, as far as the Court can tell, any prestige when he returned the key. In addition, Milo fails to show that any similarly-situated individual outside his protected class was allowed to retain a key. (In fact, Milo does not put forth evidence that *any* other individual was allowed to retain a key.)

Because Milo fails to make out a *prima facie* case of discrimination, Contour Saws is entitled to summary judgment on Milo's claim that Contour Saws discriminated against him when it required him to return the key.

Contour Saws is entitled to judgment as a matter of law on Milo's disparate treatment claims. Accordingly, the Court grants Contour Saws's motion for summary judgment on Milo's disparate treatment claims under Title VII and § 1981.

**C.     Milo's retaliation claim**

Milo next asserts that Contour Saws violated Title VII's anti-retaliation provision by terminating his employment in retaliation for his having complained about discrimination at Contour Saws.

Milo does not attempt to establish his retaliation by direct evidence. Rather, he seeks to proceed under the test for indirect evidence. To establish a *prima facie* case of retaliation, Milo must show "that '(1) after lodging a complaint about discrimination, (2) only he, and not any otherwise similarly situated employee who did not complain, was (3) subjected to an adverse employment action even though (4) he was performing his job in a satisfactory manner.'" *Whittaker v. Northern Ill. Univ.*, ___ F.3d ___, ___ 2005 WL 2291736 at * 6 (7th Cir. Sept. 21, 2005) (quoting *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 642 (7th Cir. 2002)).

Milo, once again, is able to show that he was performing his job to his employer's satisfaction. In addition, Milo has put forth enough evidence to create an issue of fact as to whether he complained about discrimination. He testified, for example, that in the spring of 2000, he both complained to Koszewski that employees were making racist comments and questioned whether another employee was being disciplined because of his national origin. The Court assumes, without deciding, that this suffices.

Milo clearly falls short of a *prima facie* case, however, with respect to his obligation to put forth evidence that a similarly-situated employee was treated more favorably. Milo claims

that his employment was terminated in retaliation for his discrimination complaints, but he fails to put forth evidence of similarly-situated employees who did not make discrimination complaints and who were not discharged. This should not have been a difficult showing to make, but Milo fails to put forth the requisite evidence.

Because Milo has failed to make out a *prima facie* case of retaliation, Contour Saws is entitled to summary judgment on Milo's retaliation claim.

## IV.     Conclusion

For the reasons set forth above, the Court grants Contour Saws's motion for summary judgment and, accordingly, grants Contour Saws summary judgment with respect to all of Milo's claims.

ENTER:

*/s/ George M. Marovich*

George M. Marovich
United States District Judge

DATED: 10/21/05